**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**ONE 1997 TOYOTA LAND CRUISER,**
**California License No. 3WMX630,**
**VIN JT3HJ85J9Vo178775, its tools and**
**appurtenances, Defendant,**

**and**

**Martha Irene Fereydouni,**
**Claimant–Appellant.**

**No. 99–55661.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 5, 2000

Filed April 26, 2001

As Amended June 21, 2001.

Richard M. Barnett, San Diego, California, for the claimant-appellant.

Gregory A. Vega, United States Attorney, Rupert A. Linley, Special Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

Before: D.W. NELSON, BRUNETTI and KOZINSKI, Circuit Judges.

## OPINION

D.W. NELSON, Circuit Judge:

Martha Irene Fereydouni appeals the district court's denial of attorney's fees under a provision of the Equal Access to Justice Act ("EAJA") that permits an award of attorney's fees if "the demand by the United States is substantially in excess of the judgment finally obtained by the United States and is unreasonable when compared with such judgment. . . ." 28 U.S.C. § 2412(d)(1)(D). This provision, which was enacted as a 1996 amendment to the EAJA, has never before been construed by a court of appeals. We vacate the district court's decision and remand for further proceedings consistent with our opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 5, 1998, the United States filed a complaint for forfeiture against Fereydouni's 1997 Toyota Land Cruiser. The complaint alleged a series of events involving Fereydouni's boyfriend, Fernando Castanos, who was arrested on October 1, 1997, on charges of smuggling 432 kilograms of cocaine into the United States. At the time of his arrest, Castanos was driving the sport utility vehicle, which the government then seized. Fereydouni had purchased the vehicle on July 18, 1997 for $50,132.57, the bulk of which was paid by a wire transfer from a Mexican bank. The complaint estimated the vehicle's value at $40,000.

Before the forfeiture claim was filed, a government investigation had established that Castanos bought Fereydouni a house with $157,000 in cash. After the forfeiture action was filed, Castanos pleaded guilty to cocaine trafficking charges and admitted during three days of debriefing that he bought the Land Cruiser for Fereydouni with drug proceeds. At settlement conferences in April and September 1998, the government demanded $30,000 to terminate its claim on the Land Cruiser.

■ The government's settlement posture changed dramatically after the district court denied its motion for summary judgment on November 25, 1998. Because the government cannot use information obtained after filing a forfeiture claim to establish probable cause to initiate such proceedings, *see United States v. $405,089.23 U.S. Currency,* 122 F.3d 1285, 1289 (9th Cir.1997), the district court excluded Castanos's admissions about the source of the money used to purchase the Land Cruiser. Within two weeks of the denial of summary judgment, Fereydouni and the government settled for $1,000 and a $4,000 bond to cover the government's costs incident to the seizure. The district court approved the agreement and entered an order on December 8, 1998.

Fereydouni moved for the award of attorney's fees and costs, pursuant to three provisions of the EAJA: 28 U.S.C. §§ 2412(d)(1)(A), 2412(b), and 2412(d)(1)(D). The district court denied the motion on all grounds. In denying the motion under subsections 2412(d)(1)(A) and 2412(b), the district court ruled that the government's forfeiture action was "substantially justified."

Fereydouni only appeals the issue of whether she is entitled to an award of fees pursuant to § 2412(d)(1)(D), which provides the following:

> If, in a civil action brought by the United States or a proceeding for judicial review of an adversary adjudication described in section 504(a)(4) of title 5, the demand by the United States is substantially in excess of the judgment finally obtained by the United States and is unreasonable when compared with such judgment, under the facts and circumstances of the case, the court shall award to the party the fees and other expenses related to defending against

the excessive demand, unless the party has committed a willful violation of law or otherwise acted in bad faith, or special circumstances make an award unjust.

The district court denied Fereydouni's motion under § 2412(d)(1)(D) on two grounds. First, the district court described how the provision, which amended the EAJA, was enacted as part of the Small Business Regulatory Enforcement Fairness Act of 1996, Pub.L. No. 104–121, § 232(a). The district court interpreted this legislative history to suggest "that Congress intended the provision to apply to small businesses-not to claimants in a forfeiture case." In the alternative, the district court construed the disposition of the forfeiture case to fall outside the statute's requirement that the United States obtain a judgment: "While the parties in the present case reached a stipulated settlement, a review of the docket reveals that no 'judgment' was ever entered in the United States' favor. Thus, because the United States never obtained a judgment, Claimant cannot seek fees under the express terms of the statute." Fereydouni timely appeals.

## II. DISCUSSION

### A. STANDARD OF REVIEW.

■ A district court's decision to deny attorney's fees is reviewed for an abuse of discretion. "An abuse of discretion occurs if the district court based its decision on an erroneous legal conclusion or a clearly erroneous finding of fact. Interpretation of the EAJA is a question of law reviewable de novo." *Andrew v. Bowen*, 837 F.2d 875, 877 (9th Cir.1988).

### B. 28 U.S.C. § 2412(d)(1)(D) APPLIES TO CIVIL ACTIONS INVOLVING INDIVIDUALS.

■ In its order denying the motion for attorney's fees, the district court first ex-amined § 2412(d)(1)(D)'s legislative history, concluding that "Congress intended the provision to apply to small businesses-not to claimants in a forfeiture case." The district court erred by not analyzing the plain text of the statute, which unambiguously gives individuals the right to seek an award of attorney's fees.

■ In construing a statute, we first consider its text. "[W]hen the statute's language is plain, the sole function of the courts-at least where the disposition required by the text is not absurd-is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank,* 530 U.S. 1, 120 S.Ct. 1942, 1947, 147 L.Ed.2d 1 (2000) (citations and quotation marks omitted). If the statute's meaning is clear, we will not consider legislative history. "When the words of a statute are unambiguous, ... this first canon is also the last: judicial inquiry is complete." *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (citations and quotation marks omitted).

In the present case, the language of § 2412(d)(1)(D) plainly contemplates awards of attorney's fees to individuals as well as to small businesses. The provision mandates fee awards to "the party" to "a civil action brought by the United States" where the demand substantially exceeds the judgment obtained by the government. 28 U.S.C. § 2412(d)(1)(D). The statutory definition of "party" includes "an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B). The district court's conclusion that § 2412(d)(1)(D) only applied to small businesses is contradicted by unambiguous statutory language, and the court's reliance on the provision's legislative history was unwarranted.

The government also cites to legislative history in arguing that the provision only applies to agency regulation. Again, the plain language of § 2412(d)(1)(D), which covers all "civil action[s] brought by the United States," compels a contrary conclusion. Although the government argues that its construction of the statute is supported by the availability of § 2412(d)(1)(A) as an alternative provision to protect people like Fereydouni in forfeiture cases, such an interpretation is undermined by § 2412(d)(1)(D)'s inclusive language and by a fundamental difference of purpose between subparagraphs (d)(1)(D) and (d)(1)(A). While (d)(1)(A) only awards fees to parties that prevail against the government-and only where the government action is not substantially justified-(d)(1)(D) awards fees to parties against whom the United States obtains a judgment, with no exception for substantial justification. In the present case, the government's action against Fereydouni yielded a forfeiture of $1,000 and the costs of investigation. The district court's settlement order was a "judicially sanctioned change in the legal relationship of the parties." *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources,* 532 U.S. ——, 121 S.Ct. 1835, No. 99–1848, slip op. at 6 (May 29, 2001). This judicially sanctioned change was obviously in the government's favor, so it is the prevailing party. Fereydouni, therefore, may not proceed under (d)(1)(A), but she can seek relief under (d)(1)(D).

## C. A CLAIMANT MAY RECEIVE ATTORNEY'S FEES PURSUANT TO 28 U.S.C. § 2412(d)(1)(D) EVEN IF A CIVIL ACTION RESULTS IN SETTLEMENT.

The district court's second basis for denying Fereydouni's motion was that the entry of a stipulated settlement did not meet § 2412(d)(1)(D)'s requirement that the United States "obtain" a "judgment" in a particular case. The provision requires a demand "substantially in excess of the *judgment finally obtained by the United States* . . . ." 28 U.S.C. § 2412(d)(1)(D) (emphasis added). The district court's settlement order forced Fereydouni to forfeit $1,000 and costs of investigation to the government. As the catalyst to a favorable judicial action, the government "obtained" the settlement order, and that order was a "judgment" for purposes of the EAJA.

The EAJA defines "final judgment" as "a judgment that is final and not appealable, and includes an order of settlement." 28 U.S.C. § 2412(d)(2)(G). Although the government attempts to distinguish between "final judgment" and "judgment finally obtained," the language in § 2412(d)(1)(D) obviously includes settlements. The legislative history cited by the government supports this interpretation. *See* 142 Cong. Rec. E571–01, E573 (1996) (statement of Rep. Hyde) (describing § 2412(d)(1)(D) as a provision aimed at forcing "government attorneys . . . [to] adjust their actions . . . and not routinely issue . . . demands at the high end of the scale merely as a way of pressuring small entities to agree to quick settlements."). Although the government argues that the statutory language requires a formal adversary verdict, such a construction would never deter the government from making excessive demands at the onset of litigation in order to win a quick settlement. Rather, the provision would apply only in the few cases where the government gets a favorable verdict, but for much less than its demand. The government's interpretation would render the statutory text a virtual nullity.

The government makes two additional arguments in support of the position that settlements are not included within § 2412(d)(1)(D). First, it argues that the provision would never apply in the settlement context because "the government's last demand would necessarily be identical to the settlement amount" and could never be "substantially in excess of the judgment finally obtained...." Such a construction of the provision would contradict language that defines final judgments to include settlements and is designed to deter the government from making excessive initial demands to force parties to settle. Moreover, the government's position is undermined by the statutory definition of "demand" as "the express demand of the United States which *led to* the adversary adjudication, but shall not include a recitation of the maximum statutory penalty (i) in the complaint, or (ii) elsewhere when accompanied by an express demand for a lesser amount." 28 U.S.C. § 2412(d)(2)(I) (emphasis added). The EAJA defines "demand" as a static concept and not one that metamorphoses over the course of settlement negotiations. The definition does not include a final settlement offer, nor should it, if the statute functions to deter the United States from using excessive initial demands to pressure private parties into settlements.

■ The government's second argument relates to the EAJA's definition of "demand." Focusing on the use of the words "adversary adjudication" in § 2412(d)(2)(I), the government argues that the definition of "demand" contemplates only a decision by a judicial officer. Again, the government's analysis is unconvincing. As used in the EAJA, "adversary adjudication" refers not to a judicial decision, but rather to a particular administrative procedure. The phrase appears in § 2412(d)(1)(D), with reference to a nearly identical provision dealing with administrative law, 5 U.S.C. § 504(a)(4). "Adversary adjudication" in that provision is defined as "an adjudication under section 554 of this title in which the position of the United States is represented by counsel or otherwise...." 5 U.S.C. § 504(b)(1)(C). Not only does § 2412(d)(1)(D) distinguish between a "civil action" and an "adversary adjudication," but also "adversary adjudication" describes a specific administrative process (adjudication, as opposed to rulemaking) rather than, as the government argues, a formal decision by a judge. In fact, the EAJA definition of "demand" is virtually identical to the definition in 5 U.S.C. § 504(b)(1)(F) (" '[D]emand' means the express demand of the agency which led to the adversary adjudication, but does not include a recitation by the agency of the maximum statutory penalty (i) in the administrative complaint, or (ii) elsewhere when accompanied by an express demand for a lesser amount."), which without question uses "adversary adjudication" as a term of art. The government asks us to define "adversary adjudication" in § 2412(d)(2)(I) in a manner completely different from how the same phrase is used in § 2412(d)(1)(D) and the administrative law provision it incorporates by reference, 5 U.S.C. § 504(a)(4). We believe it far more plausible to interpret "demand" to include a government demand that leads to an adversary adjudication or a civil action; otherwise, a provision that invites EAJA motions in connection with civil actions would limit its applicability to administrative actions. *Cf.* 142 Cong. Rec. E571–01, E573 (1996) (statement of Rep. Hyde) ("As used in these amendments, the term 'demand' means an express written demand that leads directly to an adversary adjudication or civil action.... In the case of a civil action brought by the United States, the demand could be in the form of a

demand for settlement issued prior to commencement to the litigation.").

### D. THE GOVERNMENT'S DEMAND IS SUBSTANTIALLY IN EXCESS OF THE JUDGMENT OBTAINED AND WAS UNREASONABLE WHEN COMPARED WITH THE JUDGMENT, UNDER THE FACTS AND CIRCUMSTANCES OF THE CASE.

■ In order for Fereydouni to prevail on her motion, the government's demand must be "substantially in excess of the judgment" it obtained. In its forfeiture complaint, the government demanded the vehicle, which it valued at $40,000. The disparity between the demand and the final settlement is substantial.

In addition to the substantial disparity requirement, the demand, when compared to the judgment, must be "unreasonable ... under the facts and circumstances of the case...." 28 U.S.C. § 2412(d)(1)(D). Taken by itself, the government's initial demand was reasonably linked to the value of the target of the forfeiture action. But the provision requires a comparison between the demand and the $1,000 settlement. The settlement was reached within two weeks of the district court's denial of summary judgment and exclusion of Castanos's admissions that the vehicle was purchased with drug proceeds. The district court excluded those statements because they were made after the forfeiture action was filed. At the start of litigation, then, the government did not have any statements from Castanos, yet it valued the litigation at $40,000. It subsequently adjusted its valuation to $1,000, in addition to up to $4,000 in costs incident to the seizure, when the district court essentially forced the government to pursue its original case against Fereydouni's Toyota. Under the facts and circumstances of this case, then, the government's demand was not reasonable when compared to the settlement amount.

### E. REMAND IS REQUIRED TO DETERMINE WHETHER ANY OF § 2412(d)(1)(D)'S EXCEPTIONS APPLY.

■ A motion for attorney's fees under § 2412(d)(1)(D) may be denied if "the party has committed a willful violation of law or otherwise acted in bad faith, or special circumstances make an award unjust." Fereydouni has not been charged with any illegality, and she has asserted an "innocent owner" defense to the forfeiture charges. Nor does there appear to be any evidence of bad faith on the record before us. Nevertheless, because the district court is in a better position to determine whether an exception to an award of fees is justified, we remand for the sole determination of this issue. On remand, the district court should note that while other provisions of § 2412 allow denials of fees where the government action was "substantially justified," § 2412(d)(1)(D) contains entirely different language. Even though the government may have been substantially justified in bringing its action against Fereydouni's vehicle, that alone should not disqualify her motion for attorney's fees.

### CONCLUSION

Therefore, the district court's denial of attorney's fees under 28 U.S.C. § 2412(d)(1)(D) is VACATED and REMANDED for the sole determination of whether an award of attorney's fees is unwarranted because "the party has committed a willful violation of law or otherwise acted in bad faith, or special circumstances make an award unjust."